Case number 17-7138, Ronald E. Peck, Appellant v. Selex Systems Integration, Inc. and L. Mr. Wilder for the appellant, Mr. Hilton for the appellant. Mr. Wilder and I'll just announce to the counsel for both cases that Judge Henderson will consider the cases based on the oral arguments of today's, based on the recording of today's oral arguments. Thank you, Your Honor. May it please the Court, William Wilder for the appellant, Ronald Peck. Mr. Peck appeals from the adverse judgment of the district court against him under count one of the amended complaint, his state law claim seeking nine months severance pay under Selex's severance pay policy, and under count two, his ERISA claim seeking his accrued benefit under Selex's deferred compensation top hat plan. Mr. Peck is entitled to judgment under count two for reasons that also resolve the ultimate question under count one of the amended complaint of whether or not he was terminated for cause in accordance with the definition of under Selex's deferred compensation plan. It cannot be cause to terminate an employee's existing contract that he declines to modify that contract by accepting a new position. While Mr. Peck was an at-will employee, and that meant that his employer was free to propose modifications to his employment and even condition continued employment upon that agreement, as Selex concedes, Mr. Peck was entitled to decline that new position. And then the employer could decide whether to terminate him, to obtain an employee who would agree to the new conditions, or to continue his employment under the existing terms. But Mr. Peck, exercising that right to decline the offer of new employment cannot be cause for discharge under the definition of cause in the Selex plan, regardless of the standard overview applied under ERISA to that plan interpretation dispute, that is habitual neglect or refusal to perform the material duties of his employment. And Selex's unreasonable interpretation of the plan, which is also arbitrary and capricious because it's contrary to the plain meaning, ultimately reduces to he's obligated to do whatever his employer directs him to do, including taking a new position. And that is simply an effort to read into the plan an exclusion for the offer of comparable employment that nowhere appears in it. Can I ask you a factual question, which is the position that he was asked to be moved to, under the Top Hat plan, was that a position that would also get the benefit of the deferred compensation under the Top Hat plan? Or would that position have put him in a different place in the org chart so that he wouldn't be one of the top strat of management that would get the... As I understood Selex's position, moving to this new position would not disqualify him from the key plan because he was designated as a key employee. They hadn't asserted that at any point, Your Honor. But rather the plain reading of the plan is that Mr. Peck's entitled to his accrued benefit because Selex chose to terminate his employment in order to obtain, rather because he declined to modify the plan. And that disposition of the interpretation of cause also resolves the ultimate issue under count one and Mr. Peck's entitled to judgment in the amount of nine months of severance pay. The district court erred by ruling that his position was not eliminated. Selex should be precluded from now contending, only after the initiation of litigation, a contractual ground that it never asserted when actually performing under the agreement. In September 2012, it's position of Mr. Peck was there was no other job for him in the district and the duties, not the position, but the duties of his business development vice president position had been distributed to other employees. It did not deny his severance benefit on the ground that his position was not eliminated and therefore he wasn't eligible. Because that position elimination was an eligibility issue, not an exclusion. Rather it relied on the exclusion provision of cause termination to deny him the benefit. Now the district court ignored that Mendez Hold issue that is followed in the district after first being established by the Supreme Court in McCarthy. But this court should apply that to preclude Selex from now arguing this issue of position elimination. But even considering the issue, the district court erred in its conclusion that the position was not eliminated. Since all of the objective facts, whether it's the elimination of Selex's DC staffing to just one employee working from home just a few months after Mr. Peck's termination, the closure of its office, the elimination of its mailing address, and that more than a year later it wasn't seeking to fill his position, all of those objective facts established the position was in fact eliminated. So on the deferred compensation issue rather than the elimination of the position deals more directly at least with the severance pay issue. So on the deferred compensation issue, the key question seems to be, the key interpretive question under the contract seems to be whether the material duties and obligations of his or her employment, whether that language necessarily means employment in a position, which is essentially your position, which is that has to mean, that has to be what it means, or just employment in some fashion with the company, which I take it to be the company's position. And what are the best indicators from your perspective that what it has to mean is employment in a position? The best indicators of that, Your Honor, is the specific language that's used. The material duties, not just generally, not generically duties, but the material duties of your employment, and again the purpose of ERISA, which is to put the ordinary person on notice of the conditions of the benefit. And so material duties can only reasonably be interpreted in terms of what are my duties now, that is in the position that I am in now, as opposed to duties that I can't know about that are of a position I've never held. So it simply wouldn't be possible to put the ordinary person on notice of duties that he or she doesn't now perform and couldn't fail to perform since they aren't the duties of the position that the employee is now performing. And so the very specific definition of cause under the plan is what requires that it be the material duties of the position the employee is in at the time that the termination decision is made. I mean, that submission is not without intuitive force, but you could have a situation in which an entity hires individuals into a position and the position by nature is one that just doesn't entail a particular set of duties at a particular location. It could be that, just to use a far-field example, so you have a trainee program, and the position is a trainee position. You come into the trainee position. You accept the position. We don't know where you're going to be stationed. It could be anywhere in the country, and we don't know exactly what your duties are because it's going to depend on the local needs. But what you're agreeing to come into is an open position that is just one whose duties and whose location and all of those details will be filled out later, but you're coming on board with the understanding that it could be any of those. Yes, Your Honor. There could be a scenario where that's true because at the time of the employment, the employee's put on notice of that. And therefore, in performing that position, the employee knows that there could be broader duties associated with it, that's just a question of how the employment is defined by the parties and the scope that the parties define it. And material duties could vary for one employee than another, even at the same company. And so that's true. For Mr. Peck, however, he had a specific position with specific duties, and therefore that language has a different notice, a different connotation and application to his specific position. So, Your Honor, even considering if 52A's clearly erroneous standard was considered under the severance plan, it's simply those objective facts and even the ultimate facts cited by the district court in its two-sentence conclusion supports that the position was eliminated. We would say as a matter of law, you can't rely on alleged replacement at a post-merger company, a new company, and apply it to a replacement at a pre-merger company. But the reality is there were three companies merged, and there were at least two employees at the predecessor companies in this business development position, and following the merger there was only one. And so just as a matter of mathematical certainty, Mr. Peck's position was eliminated. On the severance question, you're assuming that the district court's finding is clearly erroneous and judgment should be entered? Well, Your Honor, we would assert Rule 52 doesn't apply because there's no disputed facts, no credibility determinations, and the question of whether the position is eliminated should properly be considered a conclusion of law, not a finding of fact akin as under the U.S. v. General Motors standard. I think what we would submit that even if Rule 52 is applied, it was clearly erroneous because it's contrary to the objective undisputed facts in the record, and therefore, yes, Mr. Peck should be entitled to judgment under Count 2, even under a Rule 52a standard. If there's nothing further, thank you, Your Honor. Thank you. Thank you. Timothy Hilton for the appellees. May it please the Court. Thank you, Your Honors. First to speak briefly about what I would call the contract. Hold on. Yes, Your Honor. On your right, there should be a button to lift it up. Thank you, Your Honor. Is that acceptable? Yes. Thank you. First to respond briefly to talk about the severance claim or the contract claim, to respond first to the idea of this mend your hold doctrine. It's in the manner of an estoppel claim, and Mr. Peck's argument relies on the notion that pre-litigation, not simply that Selex didn't explain every reason for its actions, but that Selex took a position and then changed its position. The record evidence is clear that on September 30, 2012, Selex informed Mr. Peck that due to the circumstances of the termination of his employment, he was not eligible under the Deferred Compensation Plan or its severance policy. It's not accurate that Selex ever disclaimed or ever affirmatively stated that his position had not been eliminated, or I'm sorry, that it had been eliminated. And regardless, the clearly erroneous standard applies to the District Court's finding of fact that Mr. Peck's employment did not end due to position elimination. The facts about whether or not Mr. Peck's position was eliminated that Mr. Peck emphasizes might be interesting, but ultimately the question under the contract is that you're eligible for severance under the policy if your employment ends due to position elimination. Even if Mr. Peck's position was eliminated at some point in the future, which we maintain that it wasn't, and the evidence is sufficient to support that finding, the parties are really not in dispute that Mr. Peck's employment ended as a result of his refusal to perform the duties that were assigned to him in the Overland Park, Kansas office. Now, we assert that that was cause for termination of employment. Obviously, Mr. Peck disputes that it was, but there's really no one who's ever asserted that Mr. Peck's employment ended due to position elimination, and no competent record evidence other than speculation about what might have happened 18 months after his termination to say that his position was eliminated. Do you know, just as a rough practical matter, how much is at stake with the severance issue and how much is at stake with the deferred comp issue? Yes. Under the deferred comp, I think it's approximately $57,000, and under the severance policy, it would be nine months of severance, and I believe it's in the range of $180,000. And to speak now about the ERISA claim, under the Peddoway case, when a plan is given interpretive discretion, this court reviews, courts review their denial of a claim under an arbitrary and capricious standard. So that ultimately means, and the parties essentially agree... So let's just give you the benefit of the doubt on the standard first, just as a matter of assumption for now. I'm not saying that that's necessarily right, but let's just assume that to be true. Even if we give you the benefit of that, does your position mean that you could have told Mr. Peck, you know, here's the obligations of your employment. We need you to take a 90 percent pay cut, and we need you to move into essentially a ministerial clerical position. And I don't mean to denigrate that position, but the pay would indicate that it's not valued as much by the company this far away. And if you don't do that, obviously you're not adhering to your material duties and obligations of your employment because this is what we need you to do as your employer, and you'll be terminated for cause. No, not necessarily, Your Honor. I mean, I think... Why not? There probably is a limiting principle here. Ultimately, the question is whether the committee's determination of cause termination is reasonable. And under these facts, Mr. Peck was directed to take a position where he would lose, a cost of living increase that he got when he was transferred to D.C. As you note in your question to Appellant's Counsel, to answer that question, he would have remained eligible. He was moving from one vice president role to another vice president role. But it's a different position. The company doesn't deny that. And I think the way you've described it is that it's a different position. Oh, absolutely, Your Honor. Material duties are different. The material duties of that position would have been different, yes. It was a change to a quality and technical role, similar to those Mr. Peck had performed at various other points in his career. And what's the limiting principle that you have in mind to address Judge von Boston's question? Well, I can't necessarily say in the abstract what the limiting principle is, Your Honor, but I don't think it's presented by these facts where... That makes it a little bit hard because one limiting principle that seems to work and the way against which all employment law seems to operate is that a position is a thing that you are hired into and a different position is a different thing in which you could, in theory, have been hired into but you weren't. And when you move from one position to another, particularly when you're moving halfway across the country, that's just a different set of material duties. That could be, Your Honor. But under the course of the party's conduct over Mr. Peck's approximately 15 years of employment, he had accepted, he had taken, and I should say he'd been assigned, numerous different positions at the discretion of the company. He'd always performed them. And the moving back and forth across the country issue is, I think, of less importance here in that we were reassigning him to the headquarters in Kansas where he had lived for most of his career, where he still owned a home, and to a quality and technical role that he had performed similar roles to throughout his career. Yes. Some people might think moving to Kansas is a demotion. Having grown up there, I wouldn't say that. But it does seem to me to be a – it's just a different situation. And it seems questionable whether the – a contract that refers to material duties and obligations of his or her employment doesn't necessarily mean material duties and obligations with respect to the position to which you're hired. And if you want to be moved to – if you are asked to be moved to a different position, I think most employees would naturally think, well, now you're asking me to do something that I wasn't hired to do. And, of course, you're right that in some situations in the past, it may well have been to my advantage to take the move that you've offered me, but now you're offering me something that I just don't want to do. I want to stay in the position that I have. And then you're forced to move under pain of being – under pain of being terminated. And to call that cause might strike that employee as a surprise. I don't dispute that it might strike some as difficult. Of course, in this situation, the parties went into this with their eyes wide open. Mr. Peck – Well, let me ask you this. Let me ask you a form of the question I asked earlier to your opposing counsel. If you – what you gave him the opportunity to do was to move into a position that wasn't part of the Top Hat plan. No. So you didn't – I know that didn't – I know you're saying that didn't happen. But I'm just saying suppose that that was the offer. Actually, the pay is going to stay the same. Your ongoing pay is going to stay the same. Now, it's true that you're not in the top tier anymore, so you're not going to get the benefit of the Top Hat plan, but this is something the company needs you to do. Under the argument that was spelled out in the letter and under the argument that's in your briefs, it seems to me the company would say that that's fine. We could have done that. And if he refused to accept that, then that would have been a termination for cause. I think that that would approach changing the material nature of the employment as it significantly changes the compensation. Our position here is that he received a significant cost-of-living increase when he went to D.C. That would have dropped away. Our position is that it's effectively – he would have had the same compensation in Kansas and in D.C. He would have remained in a vice president role, albeit with different substantive duties. And as I was saying a moment ago, the parties went into this with an understanding. Mr. Peck refused and insisted on continuing to perform the position in D.C., which was no longer available to him – was not eliminated, but was no longer available to him – and was given notice that we regard this as cause for termination of employment. He was given the proper notice period under the contract to – And when he refused to do that, his employment was terminated. Of course, all that presumes that you're right. I mean, because he had no duty to cure anything. You're stating the facts. That's all. The question is what the facts mean. Come back to the elimination of the job. Who filled his job when he left? When he left, initially the position was performed by Mr. Warner, the CEO of the company. Duties were also assigned to two consultants who – CELEX had to pay more for their services. Ultimately, the job was filled in early 2014. The job remained budgeted and was not eliminated. It simply is a high-level position that was not immediately filled. And there were circumstances due to the sequestration around military budgets and things like that at the time that made it more difficult to fill. And, again, our position is that on September 30, 2012, his employment does not end due to position elimination, regardless if the court finds that his position is eliminated at some point in the future. Well, I'm talking about as he's leaving. Will the position remain an open position and filled? It appears that it did not. It did not remain open and it was not filled as a position any longer. The duties were distributed, but the position was not filled. The fact that you had it on book doesn't mean anything. The position was not filled immediately, Judge. It was always budgeted, and the duties were performed by other employees and consultants, including those that we had to pay more compensation to as a result of the increase of their duties. It is true that we did not immediately put somebody into that position. So you're saying the position was open but not filled? Is that what you're saying? It remained open? Yes, the position remained in existence, unfilled, until it was filled in, I believe, January 2014. In the merged companies is what you're talking about. That's when it was filled. Yes, that's correct. Thank you, Your Honors. Thank you. Mr. Wilder, do you have any time? We will give you two minutes for rebuttal only, please. Thank you, Your Honor. Briefly, Your Honor, the assertion that Mr. Peck was not terminated because his position was eliminated but for cause confuses that the for cause provision is an exclusion under the severance plan, not an eligibility provision. And as I've already presented, we believe the record establishes the position was eliminated. The asserted ground is to exclude him from receiving a benefit he is otherwise eligible for, and that is this for cause assertion. And so that's why we contend the district court erred in ruling against him under the severance plan because his position was eliminated and the alleged exclusion was not satisfied by the company. And what do you think your best evidence is on the elimination? Well, Your Honor, it's that the operation was, in fact, closed. All of the employees went from a high of 10 to 12 to 2 to 3 at the time of Mr. Peck's termination to only one a few months later. The office space itself was closed. Its D.C. presence was eliminated, and the duties were distributed to other existing employees, which under, for example, the Sixth Circuit case we cite to the court, that is evidence of position elimination. Of course, fewer heads doing the same duties. That's what a RIF is, and that the post-merger replacement, even if considered, in fact shows that Mr. Peck wasn't his position was not the survivor since Selleck's concedes he never held the position in the merged company. And just briefly on the question of requiring him to accept this other position, nothing in the plan, the ERISA plan, deals with any of these issues. There's no standard under the ERISA plan of reasonableness or making the position of this sort or the other because there's no comparable employment provision, and therefore there is no standard under the plan for the position that Selleck's asserts. Thank you, Your Honors. Thank you, Counsels. The case is submitted.
judges: Henderson, Srinivasan, Edwards